### In re UITERWYK CORPORATION, Debtor.

### Bankruptcy No. 83–0166–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 2, 1990.

See also, Bkrtcy., 109 B.R. 478.

Don Stichter, Tampa, Fla., for debtor.

Sharyn B. Zuch, Tampa, Fla., for Backer Navid.

Zala Forizs, St. Petersburg, Fla., for Creditors Committee.

## ORDER ON OBJECTION TO CLAIM OF BACKER NAVID

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case and the matter under consideration is an Objection to a Proof of Claim filed by Uiterwyk Corporation (Debtor) challenging the allowability of Claim No. 1010 filed by Backer Navid (Navid), d/b/a Brothers Trading Firm. The claim, in the amount of $1,150,-256.00, is based on an alleged "civil theft" and conversion of $383,418.72, plus prepetition interest and attorney fees. The Debtor's objection is based on the contention that the Debtor is not indebted to the claimant in any amount.

The underlying facts which are relevant to the matter under consideration are without dispute, and both Navid and the Debtor agree that the matter could be resolved as a matter of law. These facts, as appear from the Stipulation of the parties, the record, arguments of counsel, and from documentary evidence submitted both by Navid and the Debtor, can be summarized as follows:

At the time relevant to this controversy, the Debtor was a general agent for Iran Express Lines (IEL), a corporation engaged in the business of operating sea-going vessels carrying general cargo. According to the agency agreement entered into between IEL and the Debtor (Debtor's Exh. No. 2), the Debtor was to act as general agent for IEL in the United States between the Gulf and Atlantic coast ports and various ports in the Persian Gulf for the conduct of all the vessels either owned or chartered by IEL.

On February 2, 1978, Navid entered into an agreement with the Debtor, acting as agent for IEL, for the shipment of 19 containers of air-conditioning equipment from New York to Khorramshahr, Iran on the "Margitta", a motor vessel operated by IEL. The air-conditioning equipment was delivered to the Debtor "as general agent for IEL" (Debtor's Exh. No. 2). In due course, it was loaded on the "Margitta" which left the New York harbor on its journey to Iran. While on the high seas, the Margitta was hit by a typhoon. As a result, some of the cargo on board, including Navid's equipment, was severely damaged.

On June 5, 1978, Navid sent a written claim concerning the damage to his cargo to IEL. (Claimant's Exh. No. 2) On February 20, 1980, Walter A. Rollins, Senior Vice-President of the Debtor, acknowledged that Navid's cargo was damaged and confirmed that the Debtor received a settlement claim for damage to cargo on the Margitta in the amount of $386,000.00. Rollins stated that the money was for the benefit of the Debtor as agent for IEL; however, he admitted that it was paid to Grindlay Brandts, Ltd., a creditor of IEL whose debt was guaranteed by the Debtor.

It is without dispute that Rollins requested that Navid execute a release in exchange for payment of $383,418.72. This release was to relinquish any claims Navid may have against the Margitta, her masters, owners, agents, charters, managers and underwriters from any claim based on damage to the cargo shipped by Navid on the Margitta. (Claimant's Exh. No. 3) It appears that the release executed by Navid was unacceptable to the insurance company because it was not notarized. For this reason, Rollins requested, and received from Navid, a properly notarized release which was nearly identical to the first release. (Claimant's Exh. No. 4)

In a letter to Navid, Rollins assured him that as soon as the Debtor received sufficient funds from its principal, IEL, Navid's claim would be paid. The letter expressly provided, however, that any agreements or representations made by the Debtor were

strictly in the Debtor's capacity only as agents for IEL and without any liability to the Debtor. (Claimant's Exh. No. 9)

On October 3, 1979, the Debtor received a check from the insurance carrier, Lowndes Lambert Group, Ltd., in the amount of $200,000.00, less a commission of $2,000.00, or a net of $198,000.00. The Debtor then received a second check in the amount of $183,418.72, less a commission of $1,834.18, or a net of $181,548.54. (Claimant's Exh. Nos. 5 and 6) Thus, the Debtor received the total sum of $379,-548.54 from the insurance carrier in settlement of the claims that arose during the Margitta's voyage from New York to Khorramshahr, Iran.

It is without dispute that Navid was not a named insured on the insurance policy carried by IEL, nor was he a third-party beneficiary of the contract between IEL and its insurance carrier. Navid had no contract with an insurance carrier to cover his air-conditioning equipment while in transit. It is equally without dispute that the money paid in settlement of the insurance claim by the insurance carrier was paid to the Debtor only as agent for IEL, the operator of the Margitta. Navid never received any payments on his claim for the cargo damage, and having released his claim against IEL and its agent, he apparently no longer has a valid, enforceable claim against IEL or anyone else covered by the release, including the Debtor.

These are the salient facts on which the claim of civil theft filed by Navid in this Chapter 11 case is based. This claim is challenged by the Debtor on the basis that it is not indebted in any amount to Navid because it merely acted as an agent for a disclosed principal, and because Navid was not entitled to any of the insurance proceeds which were paid in settlement of a claim of IEL, not of Navid.

Although Navid's claim is based primarily on civil theft and conversion, this Court is satisfied that it is appropriate to first examine the issue of agency, as the determination of that issue may moot the claims of civil theft and conversion. It is undisputed that the Debtor was an agent for IEL, and this Court is satisfied that Navid was aware at all times that the Debtor acted in an agency capacity for a disclosed principal, IEL.

The contract to carry Navid's air-conditioning equipment was between Sea–Man–Pak Co., Ltd., as agent for IEL, and Navid. Navid's air-conditioning equipment was delivered to the Debtor, again only in its capacity as agent for IEL. The Debtor did not own or charter the Margitta; instead, it acted as a general agent in the United States for IEL, which operated the Margitta. After Navid's cargo was damaged on the Margitta, Navid submitted a claim for damages to IEL, not to its agent, the Debtor. Navid clearly sought satisfaction for IEL only, not from the Debtor.

█ It is generally accepted principle that when a contract is made with an agent who is known to be acting as such, and the principal is disclosed, the agent is not personally liable on the contract, without his consent. 2 Fla.Jur.2d, *Agency and Employment*, § 80, p. 236. It is the disclosed principal, not the agent, who is legally bound and responsible for obligations created by the transaction.

█ In this instance, there is no doubt that Navid knew at all times that the Debtor was acting only as an agent for IEL. Navid certainly had at least a constructive knowledge of this agency relationship because of his experience in shipping cargo and his knowledge of the shipping industry in general. More importantly, however, this Court is satisfied that all of the documents in evidence leave no doubt that Navid had more than constructive knowledge, but in fact an actual knowledge, of this agency relationship.

In sum, this Court is satisfied that the Debtor acted at all times as an agent for IEL, a disclosed principal, and that this agency relationship was known to Navid. Therefore, the Debtor cannot be held liable for claims that arose out of a contract with the agent acting on behalf of the disclosed principal. It is, therefore,

ORDERED, ADJUDGED AND DECREED that the Objection of the Debtor to

Navid's proof of claim is sustained, and the claim is disallowed.

DONE AND ORDERED.